CHICAGO, B. & Q. R. CO. (SAYLES v.).
See Case No. 12,416.

CHICAGO, B. & Q. RY. CO. (SEYMOUR v.).
See Case No. 12,685.

CHICAGO, D. & M. R. CO. (BURNHAM v.).
See Case No. 2,174.

CHICAGO, D. & V. R. CO. (OSGOOD v.).
See Case No. 10,604.

---

## Case No. 2,669.

CHICAGO FRUIT-HOUSE CO. v. BUSCH.

[2 Biss. 472; 4 Fish. Pat. Cas. 395; 3 Chi. Leg. News, 201; 3 Leg. Gaz. 107.] [1]

Circuit Court, N. D. Illinois. March Term, 1871.

VALIDITY OF RE-ISSUED PATENT—ACTION OF COMMISSIONER — PATENTEE MAY OMIT PART OF HIS CLAIM — "AIR-TIGHT" — IMPERFECT CONSTRUCTION—ADDING TO PATENTED ARTICLE.

1. In considering the validity of a re-issued patent the only question is as to whether the invention described in the re-issued letters is to be found in the original model, specifications or drawings of the invention.

2. In the re-issued patent the patentee need not claim all that was claimed in the original patent, but may retain what he deems proper.

[Cited in McWilliams Manuf'g Co. v. Blundell, 11 Fed. 420.]

3. The courts must accept the action of the commissioner of patents, as the lawful exercise of his authority, unless it is apparent upon the face of the patent that he has exceeded his authority, and there is a clear repugnancy between the old and the new patent.

4. A patentee, the main and controlling element of whose invention was a metallic ice floor, may in a re-issued patent omit the specifications

of the method and form of the supports which had formed a part of his original letters patent, without impairing his claim to the subject matter retained.

5. The term, "air-tight" as applied to the floor of an ice reservoir, means substantially "water tight," or such a construction of the floor that the water will not run down upon the articles stored below, nor the air escape to melt the ice above. A patent for such a floor cannot be evaded by constructing a leaky floor. A person cannot use a patented device by constructing it in an imperfect manner.

6. The fact that in combination with the floor patented, the defendants use another floor, cannot be allowed as a defense. If the floor patented is any part of the defendants' combination, any additions or improvements made thereto do not entitle them to use the part patented.

This was a bill in equity to recover damages for past and to restrain the future use by defendants, of a patent [No. 3,252] re-issued by the United States to Benjamin M Nyce, bearing date the 5th day of January 1869, for "an improvement in buildings for preserving fruit and other substances." The substantial allegations in the bill were, that on the 19th day of March, A. D., 1861, a patent [No. 31,734] was duly issued by the United States to said Benjamin M. Nyce for a new and useful invention before then duly made by said Nyce, for an "improvement in buildings for preserving fruit and other substances;" that afterwards said Nyce, in pursuance of the acts of congress in that behalf made and provided, duly surrendered his said patent, and on the 5th day of January, A. D. 1869, he received new and re-issued letters patent for said invention with amended specifications for the residue of said term of seventeen years from the 19th of March 1861; that on the 17th day of February, 1869, by his assignment in writing of that date duly executed, delivered and recorded, said Nyce assigned, sold and transferred to said complainant, who, it is averred, is a body corporate duly created and existing under the laws of the state of Illinois, all his right and title to make, use and vend the improvements specified in and by said re-issued letters patent, in and throughout the county of Cook, in said state of Illinois, and that ever since said assignment said complainant has been and is the sole owner of said patent, and has the sole right to make, use and vend said invention in said county of Cook; that said invention is of great value to complainants, and yet defendants although knowing complainant's right to said invention, did and have unlawfully and without right, used said invention and improvement, and are still using the same, to the great damage of complainant. The answer did not deny the issue of said letters patent nor the making of said invention by said Nyce, nor deny or put in issue the novelty of said alleged invention nor the validity of the patent. It also admitted that defendants were using buildings for the preservation of lager beer, but denied that said buildings were constructed substantially in the manner described in said patent.

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

King, Scott & Payson, for complainant.
Nisser & Barnum, for defendants.

BLODGETT, District Judge. The issue in this case under the pleadings is simply upon the question of the identity of the three devices used by the defendants with that invented and patented by Nyce. It appears from the evidence that the specifications in the original letters patent, described a building constructed with two or more outer walls with the space filled with chaff, tan-bark, charcoal or other non-conducting substances, after the manner usually adopted for the construction of ice-houses. This building was to be divided into upper and lower rooms or chambers by a floor to be made of metal, recommending galvanized iron as the best material for the purpose. The upper room or chamber was to be filled with ice, packed upon said metallic floor, and the articles to be preserved were to be placed in the lower room or chamber. The patentee then describes the method in which said floor is to be supported, providing for transverse joists, the upper edges of which should be beveled so as to cover as little as possible of the under surface of the floor, and the beveled edges should be tipped or covered with metal, thereby securing the contact of the atmosphere of the preserving chamber with the greatest possible amount of the surface of the ice floor. Provision was also made for the drainage of the water from the melting ice by means of pipes at the sides of the building, passing through the walls. To secure the necessary degree of dryness in the air of the preserving chamber, certain chemical absorbents were prescribed to be used. The specifications also described a vestibule or entry, to be so constructed as to enable persons to enter the preserving chamber without the admission of external air.

The claims of the patentee under this original patent were: "1st. The construction of a preserving house, whose lower chamber, to contain provisions, is separated from its upper or ice chamber by an air-tight metallic floor, 'M,' supported on metallic joists, 'L,' whose upper surfaces consist of a series of thin edges or points, substantially as set forth." (2d claim, not important in this case.) "3d. The combination of the vestibule and the preserving chamber, constructed as set forth. 4th. The combination of the preserving chamber with the use of the chemicals used for desiccating the atmosphere, and the hygrometric apparatus." In the re-issued letters the patentee only claims on: "1st. An insulated house * * *. having an ice reservoir above, and separated from it by an air-tight metallic floor. 2d. The combination of such a house with a vestibule, as described. 3d. The use in such a house of a hygrometer, constructed substantially as explained."

It will thus be seen that while in his orig-inal patent the inventor claims the various parts of his house and apparatus in combination, in his re-issued patent his first and chief claim is for an air-tight metallic floor, separating the preserving chamber from the ice reservoir. He does not as in the first patent, claim for a metallic floor, resting on metallic joists with thin edges, although he states that method of construction as the best, when the lowest degree of temperature is desirable. But he says: "It is obvious that there are purposes to which these improvements are applicable, that do not require cold so excessive or an atmosphere so dry as to preserve fruit through successive seasons. For example, to preserve lager beer a temperature of forty-six degrees will answer, forty-three degrees being the best temperature to insure the slow and even chemical changes necessary during its two weeks of fomentation, a necessity which has heretofore closed almost all the breweries of the world from June to September. For all such purposes the strict conditions may be modified, as greater or less cold or dryness is desired. If moisture is not detrimental, leave out the absorbents. If a uniform temperature of forty degrees will suffice, the walls may be less perfect, and the instructions for insulating the metal ice floor less rigidly adhered to."

The defendants are brewers, and the alleged infringements are in certain buildings constructed by them in this city, for storing lager beer during the hot weather. The proof shows that all said buildings contain an ice reservoir, separated from the store or beer room by a galvanized iron floor, resting on wooden joists with flat edges or bearings, or on wooden knobs; that said floors pitch or descend from the center towards the outer wall, and next the wall have a trough or gutter to catch the drippings from the melting ice—the floor not fitting tightly to the wall. Defendants do not use the chemical absorbents described in the patent, but to protect the contents of the store room from the drippings from the ice floor, caused either by leakages or condensation, they construct another floor of zinc, or zinc and wood, under the metallic ice floor, which is made tight and sloping, or pitching from the center to the walls of the room. In fact, they construct a zinc roof beneath the ice floor and over the contents of the store room, to catch and carry off the water which would otherwise drip from the ice floor upon the beer casks. And defendants claim that the floor thus used by them does not infringe on complainant's patent, because: First. Complainant's patent calls for an iron floor, resting on iron supports—iron on iron. Second. The water runs off from their floor differently from what it does from floors described in the patent. Third. Their floor is not air-tight. It has a space next the wall, and also leaks some. Fourth. They use the metallic ice floor in combination with the

zinc floor or roof beneath it, and without this zinc floor or roof the ice floor would be valueless to them.

By their first point the defendants insist that the patentee is bound by the specifications in his original patent, and can only hold under his patent an iron floor on iron supports or bearings. This involves the question as to the validity of the re-issued patent.

The 13th section of the act of July 4, 1836 (5 Stat. 122), provides that: "Whenever any patent * * * shall be inoperative or invalid by reason of a defective or insufficient description or specification, or by reason of the patentee claiming in his specification, as his own invention more than he had or shall have a right to claim as new, if the error has or shall have arisen by inadvertency, accident or mistake, and without any fraudulent or deceptive intention, it shall be lawful for the commissioner * * * to cause a new patent to be issued to the said inventor * * * in accordance with the patentee's corrected description and specifications."

In considering the validity of a re-issued patent, then, the only question is as to whether the invention described in the re-issued letters is to be found in the original model, specifications or drawings of the inventor. In other words, is it his invention? If it can so be found, although defectively described, or if claimed with other matters not new or not the invention of the patentee, the re-issue is granted; and the action of the commissioner in granting the re-issue cannot be impeached or inquired into, except for alleged fraud or collusion. Blake v. Stafford [Case No. 1,504].

In the re-issued patent the patentee need not claim all that was claimed in the original patent. He may retain what he deems proper. Crompton v. Belknap Mills [Id. 3,-406]. In this case the original specifications described a metallic ice floor, but claimed it in combination with the beveled and metaltipped joists or supports. And the courts must accept the action of the commissioner as the lawful exercise of his authority, unless it is apparent upon the face of the patent that he has exceeded his authority, and there is a clear repugnancy between the old and the new patent. Woodworth v. Stone [Id. 18,021].

"An inventor is always at liberty in a renewed patent to omit a part of his original invention, if he deems it expedient, and to retain that part only of his original invention which he deems it fit to retain. No harm is done to the public by giving up a part of what he has actually invented; for the public may then use it, and there is nothing in the terms or policy of the patent act which prohibits such a restriction." Carver v. Braintree Manuf'g Co. [Id. 2,485].

"When the commissioner accepts a surrender of an original patent and grants a new patent, his decision in the premises in a suit for infringement is final and conclusive, and is not re-examinable in a suit in the circuit court, unless it is apparent upon the face of the patent that he has exceeded his authority, that there is such a repugnancy between the old and the new patent that it must be held as a matter of legal construction, that the new patent is not for the same invention as that embraced and secured in the original patent." Per Clifford, J., in Seymour v. Osborne, 11 Wall. [78 U. S.] 516, citing Battin v. Taggert, 17 How. [58 U. S.] 83; O'Reilly v. Morse, 15 How. [56 U. S.] 111; Sickles v. Evans [Case No. 12,839]; Allen v. Blunt [Id. 216.]

"Corrections may be made in the description, specification or claim when the patentee has claimed as new more than he had a right to claim, or when the description, specification or claim is defective or insufficient, but he cannot under such an application make material additions to the invention which were not described, suggested, nor substantially indicated, in the original specifications, drawings or patent office model." Seymour v. Osborne, 11 Wall. [78 U. S.] 516.

In the re-issue he claims simply the metallic ice floor. This is certainly within the rule. This floor was described in the original specifications, although combined with something else the inventor does not now desire to insist upon. There is no dispute but the patentee was the first inventor of the metallic ice floor, and he had a right to claim it as the sole subject matter of his invention, if he chose to do so. There is no departure from the original subject of his invention. He has merely simplified his claim, and confines it now to a single element, instead of a combination of elements, as at first. He is not confined to iron resting on iron; but may rest his floor on any support which enables it to subserve the object for which it is used.

The metallic ice floor was the main and controlling element of the invention. The method of supporting it, of drying the air, of securing ingress and egress, were mere incidents, whose use secured the more perfect working of the invention. This also disposes of the second objection, that the water runs off differently from defendants' floor than it does from complainant's.

It is obvious that some provision must be made for taking off from the floor the water formed by the melting of the ice, but the patentee is not confined to any special method of taking it off. He can carry it off by a gutter or through holes in the walls, or otherwise, as is most convenient. But it is urged, thirdly, that the patentee's floor must be "air-tight," and it is said defendants' is not air-tight, because it does not close up and make a tight joint with the wall, but admits a gutter along its edge between the floor and walls. I think it evident the

term "air-tight" used in the claim of the re-issued patent, is to be understood the same as "water-tight;" or, substantially, a tight floor through which the water would not run into the lower room to injure the articles stored there, nor the air escape into the upper room to melt the ice. This, of course, is a desirable condition, and the nearer air and water tight the floor is, the nearer the floor will be perfect. But I do not think the patent can be evaded by constructing and using a leaky floor.

Suppose a machine is patented in which a wheel is described as a material part—a wheel should be a perfect circle—could an infringer defend by showing that he used a wheel which was not a perfect circle? In other words, can any person use a patented device by constructing it in a slovenly or imperfect manner, so that it will accomplish the same kind of result as that intended by the inventor, but not so perfectly? But, as a matter of fact, the proof shows that all defendants' floors were made tight, and some have since become leaky by defective construction. Thus showing that in this regard the defendants attempted to make a tight floor, or an air-tight one.

But the defendants say they use the metallic ice floor in combination with the zinc floor underneath, and hence they do not infringe. This fact cannot be allowed as a defense, if in point of fact the complainant's floor is part of the defendants' combination, because the Nyce patent is for the metallic ice floor, and any additions or improvements added thereto do not entitle defendants to use what belongs to the owners of this patent. For the purposes to which this device is applied by defendants, I presume the zinc floor, to take the place of chemical absorbents, and to prevent drip, is a useful improvement, but that does not entitle defendants to use it without the consent of the patentee.

So, too, with regard to the vestibule. Defendants claim they do not use the vestibule described by the patentee, but they do use a room which performs the substantial functions of the vestibule in the patent. That is to say, the store room is entered through an adjoining room or entry, thereby preventing the external air from rushing into the preserving chamber or store room; so that this entry, as used by defendants in combination with the store room, is in all essential respects the equivalent of the patentee's vestibule. As this case stands, then, upon the pleadings and proofs, Nyce must be deemed the original and first inventor of a metallic ice floor for preserving houses, and of the vestibule in combination therewith. This fact, not being denied by the pleadings, must be held to be admitted, or, if not admitted, defendants only ask for proof, and that is furnished by the production of the letters patent. The right to use and vend this patent has been duly as-

signed to and is held by complainant. The floors used by defendants are, in their construction and functions, substantially like that described in the patent, and complainant, as assignee of the patent for the county of Cook, is entitled to recover its damages for the infringement.

The matter will, therefore, be referred to H. W. Bishop, Esq., one of the masters of this court, to take testimony, and report as to the amount of said damages, and the injunction will be granted according to the prayer of the bill.

CHICAGO, I. & N. R. Co. (GRAY v.). See Case No. 5,713.

CHICAGO, M. & ST. P. R. CO. (BARNES v.). See Case No. 1,016.

CHICAGO MANUF'G CO. (DANE v.). See Case No. 3,557.

CHICAGO, P. ETC., R. CO. (FARMERS' LOAN & TRUST CO. v.). See Case No. 4,665.

CHICAGO. R. I. & P. R. CO. (ATLANTIC & P. TEL. CO. v.). See Case No. 632.