A. R. MILNER SEATING CO. v. YESBERA.

(Circuit Court of Appeals, Sixth Circuit. November 10, 1904.)

No. 1,306.

1. PATENTS—INVENTION—COUNTER SEATS.
   The Milner patent, No. 597,686, for improvements in counter stools, used in stores, consisting chiefly of the use of a spring, which automatically throws the seat over toward and under the counter when not in use, and a rest for the stool arm when in use, although combining old elements, produces a new and improved result, and discloses invention and novelty. Also *held* infringed.

2. SAME—ANTICIPATION—EVIDENCE.
   The fact that a defendant has appropriated the device of a patent, and has been very successful in its sale, is persuasive evidence against him on the defense of anticipation.

3. SAME—INFRINGEMENT—CHANGE OF FORM.
   That a defendant has changed the form of parts of a patented device so that they are more clumsy in appearance and less useful, but are functionally the same, does not avoid infringement.

Appeal from the Circuit Court of the United States for the Northern District of Ohio.

Thos. B. Hall, for appellant.
Almon Hall, for appellee.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

SEVERENS, Circuit Judge. This case was before us on a former occasion, when we reversed the decree of the lower court which had been rendered against the complainant upon a demurrer to the bill. 111 Fed. 386, 49 C. C. A. 397. The suit is one for the infringement of a patent granted to Milner January 18, 1898, and numbered 597,-686, for improvements in counter stools, used chiefly in stores. The improvements consisted, in part, of a spring, which, coiled on the pinion of a bracket resting upon the floor, extended upward and backward behind the arm of a seat; the lower end of the arm being pivoted in the floor bracket containing the spring. The office of the spring was to throw the seat over toward and under the counter when not occupied, thereby leaving the floor space less obstructed than if the seat remained in a fixed position. The details and supposed advantages of the patent are stated in the former opinion. The bill had then been dismissed for the reason, as held by the lower court, that the patent showed no invention. In reversing the decree we said:

"It may be admitted that the invention is one of narrow limitations, but we are not prepared to hold that in the circumstances, which may be susceptible of proof, the patent should be held void, in the absence of any anticipation, and supported, as it is possible it may be, by evidence that it fulfills a useful purpose, and has been extensively adopted by the public in practical use, and further supported by the presumption of validity arising from the allowance of the patent by the Patent Office, the force of which presumption is augmented by the fact that there was a serious contest in the

office, which must have developed the characteristics of the patent, and brought them pointedly into view."

After the mandate was sent down, the defendant answered, denying that Milner invented the improvements for which his patent was granted, alleging that Milner's supposed invention had been anticipated by several patents, which are enumerated, and denying infringement. The case was heard in the Circuit Court upon the pleadings and proof. The bill was dismissed upon the ground, as stated in the decree, that the patent to Milner "is invalid and void for want of patentable invention in the device described in said patent, and for lack of novelty in said patented device." The spring is exhibited in our former opinion. But it seems desirable to reproduce the stool, in order that the relation of all the parts of the stool may be the better understood.

A is a recessed bracket fastened to the floor and to the base of the counter. "b" is a pivot extending through both sides of the bracket and the lower end of the arm, B. D is the spring, which is coiled around the pivot, and has an extension, "g," which rests on the base of the bracket, and another extension, "f," reaching some distance up the arm and engaging the back side thereof. The arm of the stool, when that is opened, rests upon the rear part of the bracket at "d." The claims are as follows:

"(1) In a counter stool, a recessed floor bracket, a curved stool arm pivoted in the bracket and engaging one of the walls of the bracket to form a stop to limit the outward movement of the arm, a spring encircling the pivot of the arm having extensions engaging, respectively, the stool arm and bracket, a seat plate formed on the upper end of the stool arm and disposed in a plane substantially at right angles to the upper end of said stool arm when the latter is in a folded position, whereby the seat of the stool will fold close against the counter, the said angle of the seat plate with the stool arm being such as to cause the seat to lie in a horizontal plane when the latter is in position for use and a seat secured to the seat plate.

"(2) In a store or counter stool, a recessed floor bracket, an arm pivoted to the bracket and engaging one of the walls of the bracket to form a stop to limit the outward movement of the arm, a spring engaging the stool

arm and bracket, respectively, a seat plate formed on the upper end of said arm and so disposed in a plane at an angle to the upper end of said stool arm that when the latter is in a folded position the seat of the stool will fold close against the counter, the said angle of the seat plate with arm being such as to cause the seat to lie in a horizontal plane when the latter is in a position for use, and a seat secured to the seat plate, substantially as described."

Several patents were introduced by the defendant to prove that Milner had been anticipated. Most of the features of his stool are shown to have been developed in former patented devices, and the controversy in respect of the validity of the patent seems to be narrowed to the provision, and particularly to the location, of the spring D and the rest "d." It is to those features that we mainly give attention. In a British patent to Rettie, granted in 1881, for a folding seat, two seat arms were used, which were hinged at different places on the bottom of the seat, one behind the other. Between the seat and the floor these arms crossed each other. The front arm, which was straight, passed down to, and was pivoted in, a floor bracket. The rear arm, after crossing the other, was turned to, and pivoted in, a bracket fixed to the counter. This arm extended beyond the pivot, and near the end of this extension one end of a coiled spring was attached. The other end of the spring was attached to a pin on the floor bracket, or standing in the floor, it is not clear which. There is no such rest for the seat arm on the brackets, or either of them, as that in Milner's patent. At a certain stage of the turning of the seat arms on each other, a shoulder on one rests on a stop fixed on the other. There is much dissimilarity between this construction and Milner's. The spring is exposed to injury, and it, as well as the arm to which it is attached, is in the way of the feet of one using the seat, and it is attached to the arm which folds up the back of the seat. The mechanism is complicated, while Milner's is simple and compact, and offers as little obstruction to the user as seems possible. A patent to Mealia, issued in 1872, shows a coiled spring to close the seat, one end of which is set in the floor and the other presses against the front of the seat arms. It is not located on the bracket, and the rest consists of a hook hinged to the seat and let into a staple in the wall by hand. The seat is not adapted to face the counter, but to the use of one having his back to the wall. Another patent to Corwin, issued in 1881, shows a seat which, when not in use, is wholly behind the wall of the counter. The arm of the seat is horizontal, and the seat is pulled out through an opening in the wall until a notch in the lower side of the arm reaches the wall and drops into a catch there. The rear end of the arm is pivoted to an upright arm, which, at its bottom, is pivoted in a bracket having a spring thereon coiled about its pivot, designed to throw the arms and the seat back under the counter when the arm first mentioned is lifted off the catch in its notch. It did not close automatically. The elements of this combination are wholly unlike those of Milner's, except the spring, which is substantially the same. If the claim in the latter's patent were for the spring alone, this of Corwin would anticipate it. But Milner puts the spring in another place in combination with other parts of a counter seat, and we nowhere find any

combination of the elements he employs much resembling his. He has undoubtedly sifted out of the older art the elements which he reorganizes. But he has reorganized in such a way as to effect a new mode of operation with a distinctly better result. None of the other prior patents make so near an approach as those we have analyzed, and it is evident that these do not any of them combine the same elements as in the same way co-operate in Milner's invention. The convenience to users of his method of combining the operative parts, the automatic operation made possible thereby, and the security of that element most exposed to injury are the beneficial results of his production. The proof also shows that the Milner counter seat has met with considerable public favor, and, what is persuasive evidence of its advantages over those of the constructions the defendant advances as anticipations, the latter appropriates Milner's production as the foundation of his own business, and has therewith been very successful. Lehnbeuter v. Holthaus, 105 U. S. 94, 96, 26 L. Ed. 939; Gandy v. Belting Co., 143 U. S. 587, 595, 12 Sup. Ct. 598, 36 L. Ed. 272; Lamb Knit Goods Co. v. Lamb Glove & Mitten Co., 120 Fed. 267, 56 C. C. A. 547. The defendant has not succeeded in effacing the reasons which were given in our former opinion for upholding the patent, and upon more mature reflection upon the whole case we are convinced that it should be held valid.

Upon the question of infringement there can be no doubt whatever. The only difference between defendant's counter seat and Milner's, worth mentioning, is that, whereas in Milner's the arm of the seat as it rises is slightly curved outwardly from the counter, and then is curved inwardly and upwardly to the seat, in the defendant's the arm first curves inwardly and then outwardly and upwardly to the seat. The former would seem to be the better, as it gives more room to the feet and dress of the user, but it is not of the essence of the invention; there is no such limitation in the claims; and the variation is only a mere change of form, seemingly adopted to evade the Milner patent. The making the arm in more bungling shape and less useful does not avoid infringement. Penfield v. Chambers Bros. Co., 92 Fed. 630, 34 C. C. A. 579; Chicago Fruit House Co. v. Busch, 2 Biss. 472, Fed. Cas. No. 2,669; Roberts v. Harnden, 2 Cliff. 506, Fed. Cas. No. 11,903.

The decree of the court below should be reversed, and the cause remanded, with directions to enter a decree for the complainant for an injunction and for profits and damages to be ascertained.