### MEURER STEEL BARREL CO. v. BOYLE MFG. CO.

(District Court, S. D. California, S. D. December 14, 1925.)

I. Patents ⊜⟶328—No. 891,895 for steel barrel, valid and infringed.

Young patent, No. 891,895, for metal or steel barrels in which heads formed separately from body are secured in manner to provide fluid-tight receptacle, *held* valid and infringed.

2. Patents ⊜⟶112(3)—Patent is presumed to be valid.

Patent is presumed to be valid.

3. Patents ⊜⟶26(1)—Antiquity of separate elements does not militate against patentability of a genuinely successful combination.

Antiquity of separate elements does not militate against patentability of a genuinely successful combination.

4. Patents ⊜⟶260—If manufacture of infringing article accidental, and not in substantial number, damages not recoverable.

If defendant's manufacture of infringing article was accidental, or due to wearing of parts of machines used, and not in substantial number, damages are not recoverable.

5. Patents ⊜⟶325—Plaintiff in patent infringement suit, establishing only accidental manufacture of infringing article in limited number, liable for all costs.

If proof and accounting in patent infringement suit established, as alleged in answer, that manufacture of infringing device was accidental, due to wearing of parts of machines used, and not in substantial amount or number, plaintiff is liable for costs of entire litigation and accounting.

In Equity. Patent infringement suit by the Meurer Steel Barrel Company against the Boyle Manufacturing Company. Decree for plaintiff.

Robert S. Blair, of New York City, Delos Haynes, of St. Louis, Mo., and Dave F. Smith, of Los Angeles, Cal., for plaintiff.

George I. Haight, of Chicago, Ill., and A. V. Andrews, of Los Angeles, Cal., for defendant.

LINDLEY, District Judge. Plaintiff, owner of patent No. 891,895 to Young, sues, charging infringement thereof and praying for an accounting. The patent has expired since the commencement of the action. It relates "to metal or steel barrels, or similar receptacles, in which the heads, formed separately from the body, are secured to the latter in such manner that a fluid-tight receptacle is provided, this being accomplished in an improved manner by means of a malleable iron clamping ring." The patent has been held valid in prior litigation. Meurer Steel Barrel Co. v. National, etc., Co. (D. C.) 242 F. 273; Meurer Steel Barrel Co. v. Draper Co. (D. C.) 260 F. 410; Meurer Steel Barrel Co. v. Cleveland Co., 268 F. 536 (C. C. A. 6th Circuit). A full and complete description and explanation of Young's patent is set forth in the District Court opinions of Judge Chatfield and Judge Westenhaver, and in this opinion will not be enlarged upon, except to the extent necessary to make plain this court's interpretation of the patent.

The defendant's construction complained of is very similar to that of the defendant in the case last cited, known as "old construction." The defendant admits the construction of the barrel complained of, but insists that it is not a barrel characteristic of its manufacture. It is not now manufacturing barrels of such construction, and insists that the form of any barrels manufactured in the form of Plaintiff's Exhibit 6, which is a typical section of the construction complained of, was accidental, or due to the wearing of parts of the machines by which the barrels were produced. Defendant has

offered in evidence Defendant's Exhibit HHH as a typical section of the barrels which it claims to have manufactured previously, and which, in the court's opinion, is clearly distinguishable from Plaintiff's Exhibit 6. However, in view of the admitted manufacture of the barrel complained of, it having been sold by defendant in the regular course of business, it becomes necessary to determine whether or not the same does infringe.

Judge Chatfield held the patent valid, but narrow in scope. Judge Westenhaver said: "Young made his invention in a crowded art, and, as noted by the patent examiner, the references cited against his application are close. Many persons were then, and had been previously, working along the same or different lines in the same field. He is entitled to his specific construction, and not to any broad range of equivalents." The Circuit Court of Appeals for the Sixth Circuit, in the case last cited, said: "It is apparent, however, that there is practically very little novelty in this invention over the prior art. It is not claimed that there is anything new in the seam uniting the barrel and the head, or in a chime ring. Whatever of invention there is in the Young device consists in the method of attaching the chime ring to this joint or seam, and the distinquishing feature of that method consists in the fact that the outer flange of the chime ring *is bent under* the interlocking joint or seam formed by folding the metals of the barrel end and head together. It follows, therefore, that, while Young is entitled to protection as to this specific construction, he is not entitled to any broad range of equivalents."

[1] Ordinarily the unanimous decisions of other jurisdictions upon the question of validity are most persuasive to a trial court. However, in view of the facts that the present defendant was not a party to any of the prior litigation; that the prior art here in evidence differs somewhat from that of the prior art pleaded in other cases; that the court differs from the other courts somewhat upon the question of priority of certain inventions, probably because of a difference in the evidence submitted and received; that this court does not agree in entirety with all of the conclusions of the other courts; and that the defendant so earnestly insists upon the invalidity of Young's invention—the court has attempted to investigate carefully the state of the prior art, and to interpret the Young patent as its specifications and claims seem to require.

The Le Febvre patent, No. 1,017,427, was allowed subsequently to Young's, but his application was prior. The plaintiff has attempted to carry back its invention to a date prior to Le Febvre's application, but the record here is such that Le Febvre must be held prior to Young. The competent evidence attempting to take Young to a date back of his application is not sufficient.

When one considers the prior art, it is manifest that, if this patent is to be held valid, it must be held to a specific construction, bound by very narrow limitations. Booth, 516,073, cited in the patent proceedings, is very near Young. He attaches the head of a copper boiler to the body by a double seam, bending the body over the top, with solder between the two parts of the seam, and creates a shoulder of one thickness of the material of the body, underneath and around which he clamps a ring of malleable iron, "tightly squeezed or pressed, so as to bring the sides of the groove against the sides of the protecting edge," "thus locking the parts in place." It was this malleable clamping iron which he relied upon in order to obtain sufficient strength to withstand pressure "from the water mains or pipes" while using light sheet copper in the sides and heads. Young modified this invention by applying it to heavier malleable sheet steel, in making a heavy shipping container, and by adding at least two strips of metal to the shoulder, thus increasing the clamping surface and doing away with the solder which was used by Booth only between the two sides of the basic seam. The heavier metal, subjected to enormous pressure, in conjunction with the clamping ring clamped about it, under the same pressure, made unnecessary the use of solder. With Booth's patent before him, Young increased the weight of the metal to such dimension as would, under pressure, create a commercially fluid-tight joint without solder and increased the size of the shoulder, giving greater clamping leverage. He thus solved the problem of his barrel joint.

The boiler of McCabe, 594,545, was built in a manner somewhat similar to Booth's, except that the shoulder was made by a single seam and by bending outward both the head and the body. However, the "strengthening ring" fastened about the shoulder had the limitations of Le Febvre hereinafter considered. The keg of Doolittle, 715,033, embraced a construction somewhat similar to that of McCabe, with the same limitation as to the clamping or strengthening iron.

Trust, 532,117, united the sides and bot-

tom of a liquid container, a wash boiler, in a double or treble folded seam, forming a shoulder of at least five thicknesses of material, around which he "clamped" a "protecting guard," which "surrounded" the shoulder, making a "solid and strong flange, which acted as a fender for receiving all shocks that a boiler is liable to be subjected to when filled with clothes—to withstand great strains upon it." Neither the descriptions nor the claims mentioned solder, but, considering the lightness of the metal, he probably found it necessary to use such material. With this patent before him, confronted with his barrel problem, Young merely turned the shoulder down the side of the barrel and increased the dimensions of his metal, to withstand the strains to which his container was to be subjected, and to "flow under pressure" into a commercially fluid-tight joint. If such adaptation of Trust's and Booth's ideas to his problem constitutes invention, it must be confined to a very narrow specific construction.

Scaife reissue No. 6,391, in his barrel, Bruson No. 132,895, in his sheet metal container, and Wilson reissue No. 1,383, in his keg, all united the body and head by a double seam forming the shoulder; but they did not clamp about the shoulder a malleable ring. Such, too, was the construction of Norton, No. 863,086. Stollberg's metal keg. No. 880,834, made use of the same joint. He fitted over the shoulder a notched band, which was riveted in place and fulfilled the same function as Le Febvre's ring. Kramer, 889,793, united the body and bottom of his tank by the same double seam, and clamped over it a reinforcing band, which formed a housing for the joint and the bottom of his tank. This was attached by rivets or solder, and if Caird is to be distinguished from Young's, so too is Kramer.

Le Febvre, however, with Scaife's joint, heated and shrank about the shoulder a malleable ring, which performed all of the functions of Young's later ring, except that it did not extend down the inside of the bent portion of the head; that is, it was not bent over and around and clamped on the inside of the shoulder and the turned-up head in the proximity of the vertically placed head, as well as on its outside and below the shoulder. Young merely extended Le Febvre's malleable ring over the joint down to the vertically placed head. Upon first thought it would seem a narrow field indeed to hold that this extension constitutes invention. However, in view of the fact that such mehod of attaching the ring tends to prevent outward bulging of the head, at and away from the joint, when subjected to internal pressure, it probably amounts to patentable improvement in this one particular only.

Caird, 473,495, was very near Le Febvre, for he used a double seam to unite the head and body, and used a malleable ring, or hoop, shrunk about the top, which, however, got its strength or retaining power from being fitted into a corrugation in the body, instead of fitting around the shoulder. Hardie, 814,375, had a double seam joint, but his ring was almost identical in operation with that of Le Febvre. Wilhelmi, 495,236, in his water boiler, had a double seam joint, around the two shoulders of which he "spun a sheet metal annular ring." This apparently, however, was not clamped tightly, only partially performed the same function as Young's ring, and did not have the inner clamping which Young added over Le Febvre. Hardie, 826,847 was a poor substitute for Reynolds. His clamping ring was retained solely by friction. Had he extended the outer end of his clamping ring and clamped it about and under the shoulder, he would have had very nearly, if not quite, the equivalent of Young.

Reynolds, 621,540, inserted the head in the body in the same manner as Young; but, where Young folded the two edges outwardly together, one over the other, to form a shoulder, Reynolds formed the shoulder by bending the two edges, either in or out abruptly, to fit into a prepared recess in the malleable ring. Each clamped the ring over and around the joint, consisting in Reynolds of the bent-over portion of the two parts, and in Young of the two folded parts. When Reynolds bent the two portions inwardly, his clamping ring on the inner side extended to the vertically placed head, thus preventing bulging of the head, as did Young; but his slip joint bent shoulder did not furnish the same leverage for clamping as did the broader, more abrupt, folded shoulder of Young. In this feature lies the only improvement of Young over Reynolds, who could not by his method of construction obtain the same resistance to internal pressure as did Young. This seems a narrow distinction, but apparently it is a greater one than that between Booth and Young, or Trust and Young, even though Booth and Trust did not delve in heavy metals. Had they applied their art to such metals as Young used, and avoided solder, they would have apparently done everything that Young did, and

even more, for Trust used a double or treble seam, thus reinforcing the joint independently of the clamping ring. Young did not use such a seam, although the plaintiff has now adopted it in its manufacture.

What has been said concerning Reynolds, 621,540, applies with equal strength to Reynolds, 750,394. In 881,951, Reynolds approached more nearly the art of Young. He made a shoulder more abrupt than in his first invention, by bending the edges at right angles and clamping the malleable iron about it; but he retained his slip joint. If we deem Young's joint a slip joint, there remains the further distinction that, in the later invention, Reynolds, like Le Febvre, failed to bring his ring down on the inside of the wall of the turned-up portion of the head to the proximity of the vertically placed head, as did Young; that is, he did not clamp the entire bent portion of the head, "holding the head tightly in engagement with the barrel body" (Young's patent, page 1, lines 87 and 88, Fig. 2, "9"). The evidence of prior use does not strengthen the contention of defendant as to the status of the art. Everything included in such use seems to have been within the inventions already discussed.

Young's invention was not in the seam, all forms of which were old, nor in the clamping ring of Reynolds, which did not turn underneath the shoulder, nor in that of Le Febvre, which did not extend down the inside of the exposed part of the head, nor in Booth's construction, where the shoulder was too narrow to afford satisfactory clamping surface, nor in Trust, who dealt only in the lighter metals and probably used solder; but his novelty lay in adding to Reynolds the old shoulder, and in adding to Le Febvre's malleable ring the inside extension of Reynolds in certain of his forms. It lay in applying Trust's and Booth's art to heavy metals. These conclusions, which seem inevitable, establish only narrow invention, and it is apparent that there is room for doubt as to whether a metal barrel maker, confronted with the shipping problem of Young, with Booth, Trust, and Reynolds before him, would not, in the mere exercise of ordinary mechanical skill, apply their art to his problem and reach the result that he has achieved. [2] But the patent is presumed to be valid. The Patent Office found it valid. Other District Courts and one Circuit Court of Appeals have so found, saying always that it comprises a very narrow invention, subject to strict limitations. This court, indulging in the presumption mentioned, and noting the commercial success of Young's patent, does not believe that it would be justified in holding that Young accomplished nothing new. As Judge Westenhaver said: "Young's invention, as finally allowed, consisted of a seam or shoulder of certain thicknesses of metal, formed by bending or folding together the edges of the head and body members and a reinforcing chime ring, with a flange so bent around and overlapping the shoulder as to positively lock and clamp it together, thereby producing a fluid-tight joint. His claims as finally allowed are no narrower than this construction. *  *  * While the references cited in the prior art are close, and the differences between them and complainant's patent are not great, there is still sufficient difference and advance over the art there shown to sustain its validity against the defense of lack of novelty and lack of invention." In addition to Young's method of underlapping the shoulder on the outside of the barrel, this court if of the opinion that an essential part of his combination is the inner extension of his malleable flange, down to a point where it is flush, or nearly so, with the vertically placed head, thus clamping the head and body together on the inside as well as the outside. In the absence of such element in Young's combination, the court is of the opinion that Le Febvre did everything that Young did.

Young's patent contains no clear or definite statement that he intended to use anything other than a slip joint in making his seam and shoulder. From all that appears, he may have intended to use either a slip joint or a double lapping joint. What he essentially had in mind was the doubling or folding of the two members, the head and body, together, to form a shoulder, independently of whether one so lapped over the other as to form a double seam. Some of his language seems to support an intent to form a double seam, and other of his language seems to negative such an intent. He might have explicitly claimed such a double seam, but he did not do so. True, his illustrations disclose the outer turned-over edge of the head as slightly underlapping the bead of the body; but in his specifications he merely says that the free edge is bent over the bead to "the desired extent,  *  *  * preferably so that its edge will be in proximity to the exposed edge of the body bead." Taking all of the language of the specifications and the claims, as well as the illustrations, the disclosure is not sufficient to disclose any real intent upon Young's part to make a seam of the shoulder.

Consequently, a shoulder formed by folding the two parts together in either a slip joint or a double seam, if combined with all of the other elements of Young's patent, would infringe upon his combination. For a shoulder formed in either manner is the equivalent of the other, so far as Young's purpose is concerned—the formation of a shoulder about which the malleable iron clamping ring may be clamped. If it was an essential of Young that his shoulder should partake of the qualities of a double seam, he should have made such intent clear. To hold otherwise would be to violate the principles enunciated by the Supreme Court, in the case of Howard v. Detroit Stove Works, 150 U. S. 164, 14 S. Ct. 68, 37 L. Ed. 1039, where the court says: "The description of the invention is vague and indefinite, and is not sufficient to enable those skilled in the art to construct it without experiment so as to attain the desired result. * * * It can hardly be said, under such circumstances, that the vague and indefinite description of the width of the flange elevates it to the dignity of invention." See, also, Fulton Co. v. Powers Regulator Co. (C. C. A.) 263 F. 578; Westinghouse v. Metropolitan Electric Co. (C. C. A.) 290 F. 661; American Lava Co. v. Steward, 155 F. 731, 84 C. C. A. 157. That Young was not definite as to how far the flanged head should be built over the bead is evident further from his statement that the effective locking he claims is achieved rather by the ring "when it is in position." [3] But, if we admit this situation, we have not destroyed the patentable novelty of Young. The form of the shoulder is immaterial, so long as it is the mechanical equivalent, for shoulder purposes, of his original construction. If Young had not bent his flange over and under the shoulder, and if he had not bent his flange down on the inside of the top, so as to clamp the head and top together and lock the joint within the clamping ring, he would have done nothing new. It was the complete locking, by the bending of the ring over and under the exposed end of the head and the slip joint, or double seam joint, whichever might be used, and down the inside wall to the vertically placed head, that constituted the invention he claimed. The antiquity of Young's separate elements does not militate against the patentability of his genuinely successful combination. He has evidently sifted from the art elements which he reorganizes and reapplies, so as to effect a new result. Milner Seating Co. v. Yesbera, 133 F. 916, 67 C. C. A. 210; Toledo Plate

Glass Co. v. Kawneer, 237 F. 364, 150 C. C. A. 378.

Even under the narrow construction that the court has given the Young patent, it is manifest that the barrel, of which Plaintiff's Exhibit 6 is a specimen, infringes, not in the manner of the seam, but in the inner extension of the malleable ring, and in the manner and to the extent which the malleable ring on the outside turns under the shoulder, formed by the joint of the body and top. The defendant's construction is very similar, as we have said, to the old construction illustrated in Meurer Steel Barrel Co. v. Cleveland Steel Barrel Co. (C. C. A.) 268 F. 539. The defendant's double seam joint forms a shoulder, the mechanical equivalent of Young's shoulder, so far as its function as a shoulder is concerned. The double seam of defendant may add some strength, but nothing more. The essence of the plaintiff's invention is the locking around the shoulder, whether the shoulder thus locked be a slip joint, or a double seam joint, or a single seam. The essential point is a shoulder around which the ring is clamped, thus making a locked connection, which cannot be broken without breaking or cutting the ring. And the defendant brings the inside of the malleable ring down almost to the vertically placed head. Had the defendant omitted the inner side of the clamping ring, it would have been within Le Febvre. Had it omitted the turning under of the outward end of the flange beneath the shoulder, it would have been within Reynolds; but the turning under tends to lock, and thus achieves what Young achieved.

There has been much discussion upon the proposition that Young describes the turning under of his clamping ring as at an "abrupt angle"; whereas, the defendant's turning under of its clamp is not abrupt, but only gradual. Young had a right to select his own vocabulary, and we must attach to the words he used such meaning as he makes clear. It is manifest that, when he spoke of an abrupt angle, he meant any angle which was of sufficient abruptness to constitute a locking. So, while the defendant has not completed the locking, but has only partially locked the shoulder with the clamping ring, in so far as it underlaps the shoulder, its construction partakes of Young's invention and infringes.

The defendant insists that the shoulder which Young described must be made entirely of the folded over portion of the body, that is, that to be within Young's invention

the clamping ring must underlap the body bead; whereas, the defendant underlaps only that portion of the shoulder made up of the bent-over portion of the head. Young by some of his language lends credence to that contention, but the court is of the opinion that, while he has been somewhat careless in his use of words, Young clearly intended to designate the turned-over portions of both the head and body as shoulder. And, if we were to accede to defendant's argument, it seems that the defendant's construction is a mechanical equivalent in this respect, for that portion of the head, which in defendant's barrel the malleable ring underlaps, in turn underlaps the bent-over portion of the body in the double seam construction, so that, when the defendant's flange underlaps the bent portion of the head, it achieves the same mechanical result as if it had extended far enough to touch the bent-over portion of the body.

The defendant contends that Young achieved no fluid-tight joint without the use of other metal between the different layers of the joint, such as solder, or some similarly functioning material, and has offered testimony to the effect that it is impossible to achieve an absolutely fluid-tight joint at all temperatures and under all conditions of pressure. But what Young had in mind evidently was a commercially fluid-tight container, and this apparently he achieved.

There were many other questions raised in the trial of this case, which were ably presented by counsel on both sides; but we believe that what has been said is sufficient to indicate the court's position upon all points of contention. The barrel submitted by defendant as Exhibit HH, and claimed by it to be its former characteristic construction, differs from that complained of by plaintiff, in that in the former there is no locking of the flange underneath the shoulder. It lacks that essential element of Young's invention, and as to barrels so manufactured there is no infringement.

[4, 5] But the plaintiff insists that the manufacture of the infringed barrel has been sufficient to entitle it to profits and damages. That is a question which is not here determined. If, upon a reference, it should be found that the barrels of the infringing character so manufactured are of substantial amount and number, the plaintiff would be entitled to damages. If such a showing cannot be furnished, and it shall appear that this infringing barrel was made by accident, and that there were no other infringing barrels, the costs of such reference, the account-

9 F.(2d)—7

ing, and this entire litigation will be upon the plaintiff; for, if the defendant's contention be correct, then upon preliminary interrogatories the plaintiff was advised of the facts as the defendant now presents them, and in such case this litigation was wholly unnecessary.

A decree in accordance with this opinion, and ordering a reference to the master for an accounting as prayed, will be entered.