WALKER et al. v. LAKEWOOD ENGINEER-
ING CO. et al.

(District Court, E. D., Michigan, S. D.
August 10, 1926.)

No. 787.

**1. Patents ⬤⟹56—Nonanalogous use held not anticipation of patent.**

Nonanalogous use of straps, as for belts for transmission of power, *held* not to anticipate a patent for use of a reciprocating strap for final smoothing of a concrete roadbed.

**2: Patents ⬤⟹260.**

Using a patented device to do only some of the things it was designed to do does not avoid infringement.

**3. Patents ⬤⟹328—Walker, 1,234,984, for road-surfacing device, held valid and infringed.**

The Walker patent, No. 1,234,984, for a road-surfacing device, *held* not anticipated, valid, and entitled to a broad construction; also infringed.

In Equity. Suit by George C. Walker and Thomas M. Lucking against the Lakewood Engineering Company and Edward C. Carr. Decree for complainants.

Stuart C. Barnes, Howell Van Auken, and Lucking, Hanlon, Lucking & Van Auken, all of Detroit, Mich., for plaintiffs.

Frank E. Dennett, of Milwaukee, Wis., for defendants.

TUTTLE, District Judge. The Walker patent, No. 1,234,984, in suit, has to do with the final operation in concrete road building. The patent has nothing to do with the machines used, or the methods used, in preparing the concrete for the road, has nothing to do with dumping the concrete in its position along the roadway, and has nothing to do, speaking in a large and general way, with shaping the particular form of the surface of the concrete. That is all done prior to the use of this patented device.

With the old manner of mixing concrete, dumping it in the road, leveling off, and then tamping, they used various means and methods of getting it into the shape they wanted, crowning it as they wanted it crowned, and tilting it in the way they wanted it tilted, so that an automobile, in going on it in a tangent, would hold on the curve of the road.

This patented device was designed, and was useful, for finally finishing the surface of the road before the cement had set and got hard, and has really to do with very small elevations and unevennesses of the surface, and not with the shape, generally speaking, of the surface. Previously this had been done most successfully probably with the hand trowel, and various things had been tried, hoping to save time and do a better job than the trowel would do in the hand of the workman. Nothing had been discovered that would do a better job than the trowel, until Walker produced the patented invention in suit, and brought in use the flexible belt or strap to be dragged across the surface of the road. It had never been used by any one so far as this record shows; no one had ever thought of such a thing, or heard of such a thing, as a flexible strap or belt, to drag back and forth in a reciprocating movement across the surface of the road, as the very last step in the finishing of the road. The road-making art is one of the great arts of the age in which we live. The Romans built enduring roads, but we had not been building enduring and good roads until we got automobiles. It is one of the essentials of the age, and it is one of the great things of the age in which we live—the building of good roads all over this country.

Now this patent goes away beyond what can be called the work of a skilled mechanic. We have had a lot of skillful mechanics building roads, and we have had a lot of engineers, and skillful engineers, building roads, and we were fussing around with labor to do the last work by hand; and by hand I mean the trowel finishing of the surface, and using other things that did not leave the work in as good shape as this simple device of the patent in suit. It is simple as one thinks of it; but that is just what defines an invention, in my judgment. It is not these great, complex machines that necessarily disclose patentability and ingenuity. The draftsman, familiar with the strength of materials, and mechanics, can build very large machines, and put a lot of mechanical elements and movements into them, making them expensive; but what we really intend by the patent law is to reward by the grant of a monopoly the bringing forth of something that can be used to our advantage, which had not been thought of before. It makes the world a better place in which to live, as the result of what they have done. Here is a thing, simple, not difficult to make, but nobody thought about it; they had not done it before.

[1] Of course, the material had been in existence; if that is to defeat a patent, then there would not be any more patents, because all materials are old. This belt itself was old. I saw them on the old threshing machines, connecting the engine with the separator, half a century ago. We could have cut a piece out of one of those belts, and made one of these belts; but we did not think about it. These belts were in common use. There would have been no difficulty in getting one of these

straps, no difficulty in dragging it in a reciprocating movement across the roadbed, which was to be finished off, but nobody thought of it. Hobbs v. Beach, 180 U. S. 383, 21 S. Ct. 409, 45 L. Ed. 586. It was absolutely new with this art; nothing anticipates it, and the results accomplished by it measure up fully and easily to the standard required for a patent. Because one could go out and find materials existing before, because one could find that straps had been used with belts, and had been used for different purposes, does not spell the defeat of this patent. You may say for Kelly's strap that it scrapes off the surface of a painted article; but the use is not at all like this. It does not anticipate this patent, any more than the belt of the threshing machine for transmitting power. No one, in the prior uses of a belt, had thought of its application to road building, and built one that was designed for, adapted to, or intended for road surfacing. Topliff v. Topliff, 145 U. S. 156, 12 S. Ct. 825, 36 L. Ed. 658. Such uses of straps for nonanalogous purposes are not anticipations. Application of Eiermann, 287 F. 1016, 53 App. D. C. 39; Fitchburg Duck Mills v. Barrell, 214 F. 778, 131 C. C. A. 189; Barry v. Harpoon Castor Mfg. Co., 209 F. 207, 126 C. C. A. 301.

So, as to the validity of this patent, it seems to me very plain that we have a good patent, and I hold both claims valid.

[2] Now we come to the question of infringement. The patent is not limited to the use by hand. The patentee describes it in that way because, at the time he took out his patent, the road machinery art had not advanced as far as it has today. We come to the defendant's structure. There are three instrumentalities and three operations: (1) The strike-off board, which levels off the concrete that has been placed upon the surface of the road, this strike-off giving the surface of the road the form which they want it to have; work which previously had been done by hand, now done by machinery. (2) A tamping operation, not only to get the road solid, but undoubtedly to work out of it the excess of water. (3) The belt operation, the final finishing stroke. The operator, with defendants' very efficient machine, does not have as hard a job to do as in earlier days, but every bit of the work of the belt of the defendants' machine was done by the patented hand belt.

There is nothing that the defendants' belt does that was not done by the hand belt. Defendants' belt on the machine does not do so much, because it is not necessary to do so much, and, of course, not being necessary to

do so much, it is not necessary to make it so heavy. They naturally change the tool to fit the work. That is the work of a skilled mechanic. No one has pointed out anything done by this belt of the defendants that was not done by the patent in suit. Defendants use this belt of the patent in suit, and they get results from it, or they would not use it; and those results are results accomplished by the patent in suit, and that is infringement. Defendants do not need all the things that the plaintiffs' belt was designed to do, and would do, and they do not build it so that it will do all the things, simply because they do not need all the things. That does not escape infringement. If a person has a patent to do certain things and accomplish certain results, and if I do not need to accomplish those results fully, but only partially, and I take his machine to accomplish a part of the results, I infringe. Milner Seating Co. v. Yesbrea, 133 F. 916, 67 C. C. A. 210 (C. C. A. 6); Jay v. Ireland & Matthews Mfg. Co. (D. C.) 280 F. 166; Kawneer Mfg. Co. v. Detroit Showcase Co. (D. C.) 240 F. 737; Penfield v. Chambers Bros. Co. (C. C. A. 6) 92 F. 630, 34 C. C. A. 579; King Ax Co. v. Hubbard (C. C. A. 6) 97 F. 795, 38 C. C. A. 423; Murray v. Detroit Wire Spring Co. (C. C. A. 6) 206 F. 465, 124 C. C. A. 371.

[3] Take the first claim of the patent in suit: It reads directly on the defendants' structure, "a road-surfacing strap"; there is no question that it is a "strap," and there is no question that it is a "road-surfacing strap, having provision at the ends thereof, so that said strap may be manipulated upon the surface of the road." They not only have a strap for manipulating, but they do manipulate. In the patent the "provision at the ends thereof" is arranged for manipulation by hand, while in defendants' structure the provision is for manipulation by machinery.

We pass to claim 2: "A road-surfacing device comprising a flat, pliable strap." There is no question that it is a "strap"; it is "pliable," and it is "flat." The fact that the front edge is upturned does not relieve it from being flat, within the meaning of this patent. It is the natural thing to do to turn up the front edge of the belt. It has a slow forward movement, and at the same time a reciprocating movement laterally of the general direction of the road. Even as to that feature, the defendants' device is not original. Walker, in the patent in suit, recognized that very feature, and disclosed in his Figure 4 the upturned forward edge of the strap. The real merit in the patent was in the belt, which could be manipulated and reciprocated across

the surface of the road. It seems to have been the ideal thing for that purpose. Claim 2 carries the words at the close of the claim, "with handle bars at the ends thereof." At that time Walker was, of course, designing this for use, as roads were then built by hand. There is a plain substitution here, for the handle bars shown in the patent in suit, of the arms carried by the machine. This takes the place of the handle bars; so I hold claim 2, as well as claim 1, infringed.

I do not think there is anything about the fact that Walker attempted to secure an allowance of his claim 3 that ought in any way to affect the scope of claims 1 and 2. He was trying to get a claim which in some respects would be broader and in some respects narrower than claims 1 and 2. He was trying to get a claim so broad that it would apply to almost anything which would reciprocate across the surface of the road in road building. It is very plain that the Patent Office was right in disallowing that claim. The hitching of something flexible on any old road-building device and dragging it along the surface of the road should not have been allowed, and he was not allowed it. There is nothing in the fact that he tried to secure an allowance of such a claim that ought to affect in any degree claims 1 and 2. They are no better because of that, and they are no worse because of that.

I think this is a broad patent. I do not get the notion that it is a narrow patent, that has to be limited to the form which is shown in his drawings, in that early stage of road building. When I use the words "early stage of road building," I mean and have in mind the extent to which it has grown during recent years, so far as road-building machines and devices were concerned. The art is still young. Walker has brought into this art for the very first time the belt and the use of the belt on the surface in road building. It is a novel idea, novel to this art. I think he has a patent on any such device for such a purpose. I do not think anybody can use a belt, reciprocating across the surface of the road, without infringing this patent. They can improve on it; they can make other inventions; but I think, if they use the strap, they must pay tribute to Walker. He is the first one to think of that idea; it was valuable, and, even though they make improvements and new reciprocating straps, these are tributary to Walker during the life of this patent. So I hold the patent valid and infringed as to both claims, and I refer it to William S. Sayres, Jr., master, to compute the usual damages and profits.